40598.   MARTINEZ v. CROWN LIFE INSURANCE COMPANY.

DECIDED APRIL 23, 1964.

*Woods & Mitchell, Freeman D. Mitchell,* for plaintiff in error.
*Jones, Bird & Howell, F. M. Bird, Paul L. Coulter, Trammell E. Vickery,* contra.

BELL, Presiding Judge. ■ The petition shows clearly that the policy matured on July 17, 1961, at a time when the plaintiff was in Cuba. The plaintiff did not become an expatriate until sometime in 1962. The petition contains no explicit allegation as to the reason why the amount due on the maturity of the policy was not paid in Cuba prior to the plaintiff's departure. As the policy forming a part of the petition declares unambiguously that the maturity value was payable on July 17, 1961, it is reasonable to infer, in absence of allegations to the contrary, that the sum would have been paid in Cuba by the defendant insurer at any time on or after the maturity date had the plaintiff been willing to accept the payment. This inference is supported by the allegation that the insurer "has offered" to pay the insured in Cuba with existing Cuban currency. The petition does not disclose where or when this offer to pay on these terms was made. This allegation, coupled with others recited in the factual summation, lends credence to the inference that the final act necessary to complete the full performance of the agreement, i. e., the payment by the insurer of the maturity value of the policy, was not accomplished in Cuba solely because of conditions adverse to the plaintiff's interests existing there. There is nothing which suggests the insured defaulted in the payment in Cuba.

Construing the allegations of the petition as a whole, these conditions adverse to the plaintiff's interest could only have been occasioned by *acts of state* of the Cuban government, for no power in Cuba, other than its own government, could have withdrawn one type of Cuban currency as a medium of exchange, rendered it valueless, and replaced it with another which in turn is valueless to an expatriate as alleged. Neither could any power

other than the Cuban government cause it to be an "impossibility," as alleged, for the insurer to fulfill presently in Cuba, in Cuban currency, the final act of payment for the reason that should the exile return to Cuba to accept the money his immediate death would result. Further, the petition specifically asserts that "the reason the plaintiff was forced to leave Cuba was to avoid becoming indoctrinated with Communism, and to avoid being forced to believe in and live under a system of government not of his free choice."

The petition unmistakably discloses that the cause sued on here was occasioned by acts of state of the Cuban government which affected the final performance of the insurance contract held by the plaintiff.

■ There is a precedent voiced recently (March 23, 1964) by the Supreme Court of the United States which commands a judgment of this court adverse to the plaintiff in error. The case of Banco Nacional de Cuba v. Sabbatino, 376 U. S. 398 (84 SC 923, 11 LE2d 804) clearly enunciates the policy of our ultimate judicial power to be that rights abridged by an *act of state* of a recognized foreign government within the domain of its sovereignty will not be subject to rectification in any of the courts within the United States regardless of merit or compassion. In announcing this precept the Supreme Court recognized the paramount importance of the executive branch of government in matters bearing upon this nation's relations with foreign governments and chose not to risk impairment of the executive's influence or its confident and positive efforts in this area by isolated judicial determinations of questions ensuing from foreign *acts of state*. The policy was endowed with substance and ample power when the Supreme Court declared that all litigation evolving out of acts of state must be determined by Federal law. One significance of this declaration is that the announced intention of the Supreme Court to refrain from adjudging questions arising out of acts of state makes it completely inappropriate for local courts, such as ours, to determine them. Local courts must exercise the same degree of judicial restraint within this area of Federal law which the Supreme Court of the United States has imposed upon itself.

The petition before us clearly alleges the abridgment of rights of the plaintiff through acts of state committed by the present Cuban government. These acts of state are not within the province of the courts of Georgia to adjudge.

The judgment of the trial court sustaining the defendant's general demurrer and dismissing the plaintiff's petition is affirmed.

*Judgment affirmed. Jordan and Eberhardt, JJ., concur.*